**ULUFALEILUPE SAFUE, Plaintiff,**

**v.**

**UIAGALELEI IONA, Defendant.**

High Court of American Samoa
Land and Titles Division

LT No. 31-91
LT No. 46-92
LT No. 17-94
LT No. 17-95

June 4, 1998

Before WARD, Acting Associate Justice, TUAOLO, Associate Judge, and PESE, Associate Judge.

Counsel: For Plaintiffs, Gata Gurr, Esq.
 For Defendant, Charles V. Alalilima, Esq.

OPINION AND ORDER

**Procedural History**

These consolidated cases were brought, by and large, to quiet title in certain communal lands in the village of Futiga by the Ulufale and Uiagalelei families. These neighboring, but not particularly neighborly, families have a history of disputing their common boundaries, (see LT. No. 24-85 and LT. No. 59-90, AP. No. 15-92).

The first of the four cases consolidated here is LT. No. 31-91 (wherein Ulufaleilupe attempted to register approximately one-half of an acre of land adjacent to the Leone-Pavaiai main highway and bisected by the road leading to the Futiga landfill). Uiagalelei duly objected to this proposed land registration. This parcel, or more precisely, that half of this parcel on the eastern side of the landfill road, was the subject property in the previous eviction case brought by Uiagalelei against members of the Ulufale family who constructed a residence thereon during the early 1990s (LT. No. 59-90 & AP. No. 15-92).

The second of the consolidated cases is LT. No. 45-92, a case brought by Ulufaleilupe against Uiagalelei for injunctive relief against the latter's actions of bulldozing land claimed by the former.

The third of the consolidated cases is LT. No. 17-94 in which Uiagalelei et al objected to a proposed registration of approximately 10 acres of communal land known as "Lepapa, by Ulufaleilupe.

The fourth and final consolidated cases is LT. No. 17-95 in which Ulufaleilupe objected to the proposed registration of approximately 10 acres of communal land known as "Vaipapa, Leififaapae, Lalogatae, and Fonomaitu," by Uiagalelei. All cases were consolidated for trial.

After several continuances granted to the Ulufale family due to the intervening death of their senior matai, this matter proceeded to trial on May 19, 1998, with a continuing vacancy in that office. The parties previously stipulated that the crops planted or growing on the disputed, overlapping areas of communal land would be awarded to the prevailing party. The Court heard testimony, admitted various exhibits into evidence, and after 2 ½ days of trial, recessed to view the subject lands and directed counsel to submit closing arguments in writing, which were duly filed.

## Findings of Fact

During the several pre-trial hearings on motions filed by counsel, the Court indicated that those areas of each respective survey situated outside of any overlapping claims did not appear at issue in these controversies since only the two parties before the Court had objected to the proposed land registrations—no other families had flied any such objections. It became apparent, however, from counsel's opening statements that these three overlapping surveys did not represent the sum total of lands claimed in Futiga by these respective families. This decision will, therefore, address the overlapping areas and all extensions beyond those areas. We are persuaded from the arguments of counsel and the testimony presented that no, or at most harmless, error occurred.

213

at trial as a result of the earlier pronouncement by the Court.

For purposes of this section the Court will rely upon Exhibit 3, a composite map showing both of the 10 acre parcels claimed by the respective families, and reference our remarks to the survey boundaries and monuments appearing thereon. We will leave for later discussion the one-half acre parcel at issue in LT. No. 31.

Testimony for the Ulufale family with respect to their claimed 10 acre parcel was primarily given by Ms. A`asa, a 58 year old resident of Futiga and a member of the Ulufale family. She testified that the contested overlapping portions of the surveys, (3.83 acres-Exhibit 3), were Ulufale land and her family had grown crops on the land without objection from the Uiagalelei family for years. Even though the Ulufale family had no houses within the area of dispute, the Uiagalelei family dwellings located there were built with Ulufale`s permission after the hurricane of 1996. On cross-examination she admitted that the name "Lepapa" means solid rock, but in the contested area there was good soil for growing crops. Further, she admitted to being served with a restraining order during the burial of her late brother near her home in April 1994. That grave appears on Exhibit 3 slightly inside the southern boundary of the Uiagalelei survey in the southwest corner. No other Ulufale family members are buried in that location or on the disputed area of land. Mrs. A`asa, although forthright in her recollection of events, did become somewhat confused when asked by counsel to locate specific areas, such as the communal pigsty, using Exhibit 3.

The second witness testifying about the Ulufale survey of the 10 acres was Salele`a Tuiolemotu who admitted to being an unlicensed surveyor who did work for licensed surveyors and who was the "surveyor" of the Ulufale parcel. No previous survey of this property existed. He also acknowledged that his starting point in the north east corner of the survey was directed by the late Ulufale Safue who instructed him to divide the church in two. No monument was found for that point of beginning, although to the east, there were a row of coconuts and a hedge close to the houses located there. As to the balance of the survey, no monuments were found or used, he simply plotted the metes and bounds as directed by the Ulufale people accompanying him.

As to the Uiagalelei testimony, the testimony was given by Uiagalelei Iona, the present senior *matai* of that family, age 53. His testimony concerning the land includes his personal involvement in previous litigation with the Ulufale family and includes his recollection of what his late father, the previous senior *matai* of the family, showed and told him about the land. His testimony was that the point of beginning for his survey was a coconut tree on the north side of the highway from which

214

the survey then proceeded south along a defined hedge then up a ridge and along the crown of that ridge as marked by a row of coconut trees and stopping at a stone wall, the remaining southern boundary of the old communal pig sty. The survey then proceeded westerly along that rock fence until its end then northerly in an arc around Mrs. A`asa's family homes, then westerly to the landfill road. From there the survey proceeds northerly along the landfill road to the main highway then east to the point of beginning. He testified that the point of beginning, the coconut tree, had been agreed upon between the two families at the conclusion of the previous land case over the grave site on the north side of the highway. Further, he testified that the area claimed contained, until recently, only his family's crops, residence and graves. Further, that the pig sty area was mostly on his family's lands although it did formerly extend to the east onto Ulufale lands. The houses of his family on the disputed area of land were built with his father's approval and duly approved by the village *pulenu`u*, who was a member of the Ulufale family.

Uiagalelei Iona also testified that the church site had been selected by his father well with the family's lands and the then Ulufale senior *matai* was of a different denomination and did not provide any land for the church. Although evasive at times, his testimony was by and large credible as to boundary monuments and historic as well as recent use and control of the disputed area.

### Discussion

When reviewing the property the Court found that the monuments, family houses, graves, pig sty wall and other traditional boundary markers corroborated the testimony of Uiagalelei.

There is a clearly defined boundary of coconut trees, hedges, and walls east of the church at the survey line submitted by Uiagalelei. The ridge line is also defined by coconuts and that north-south boundary line ends at the pig sty rock wall, then turns and runs west the full course of that wall to a point where the wall begins to curve northerly. Although the arc around Mrs. A`asa's houses is less defined, there is no indication, by houses or graves, (other than the recent 1994 grave of Mrs. A`asa's brother), that the area northerly of this survey has been cultivated or used by anyone other than the Uiagalelei family.

The Ulufale survey does not rely upon any ascertainable monuments. It includes houses and graves of the Uiagalelei family, and, as per the direction of the previous Ulufale senior matai, it bisects the church. Nor does it appear that the Ulufale survey was conducted, as required by law, by a licensed surveyor.

■ The continuing open use and occupation of the disputed area by the Uiagalelei family, the rather fertile low lying ground which could not conceivably bear description as "stony ground," and the aged, visible monuments conforming to the Uiagalelei survey lead us to the conclusion that the Uiagalelei survey of this 10 are parcel accurately reflects communal land owned by that family, by a clear preponderance of the evidence.

Nothing prevents the Ulufale family from registering all lands claimed by their survey east of the clearly defined (north-south) eastern boundary of the Uiagalelei property, but any lands claimed west of that line have not, by a preponderance of the evidence presented, been proven to be owned by the Ulufale family. Of course this may require a re-survey· by a licensed surveyor prior to any such registration.

To clarify, we deny the Ulufale's claim for injunctive relief and crop damages under LT. 46-92. The area bulldozed is immediately south of Uiagalelei Iona's residence and to the central northerly part of the disputed area, which we have held is Uiagalelei family land.

Further, as to LT. No. 17-94, the Ulufale family may register, (assuming full compliance with surveyor verification), only that part of their proposed survey east of the Uiagalelei survey's eastern boundary running north to south.

Finally, as to LT. No. 17-95, the Uiagalelei survey of approximately 10 acres, shall be duly registered based upon our decision herein. As per previous agreement of counsel all crops growing on this parcel are declared to be owned by the Uiagalelei family, the prevailing party in this dispute.

## II

We are left with LT. No. 3 1-91 to which we now return. Counsel for the Ulufale family has repeatedly moved this Court to find for his clients based upon *res judicata*, (the previous failure of the Uiagalelei family to prevail in an eviction action concerning a portion of that disputed property in LT. No. 59-90 and App. No. 15-92). As the Appellate Division clearly stated however, that action did not decide title to the property. This case, filed early in 1991 was not consolidated with LT. 59-90 before it was decided in July 1992, for reasons best known to the parties. As clearly stated by the Appellate Division, however, title to the land was not decided in LT. No. 59-90. This issue of title to this property remains unresolved and must be addressed here.

216

## Findings of Facts

Each side presented only one witness as to the parcel in LT. No. 31-91. For the Ulufale family, Fuimaono Fili Faasuamalie testified he was 66 years old and had resided in Futiga his whole life except for off-island military service from 1954-1970. He described the land as "Lepapa," a portion of the Ulufale communal land. He stated both he and his father had worked this land early in his life and in 1947 built a *fale* on the western half of this property which was still there when he left island in 1954. When he returned in 1970 the *fale* was not there, but in its place was a palagi style house.

Later, he constructed a house on the eastern portion of this parcel which was the subject matter of the dispute in LT. No. 59-90. He also stated that no previous Uiagalelei had ever objected to his sister's living on the western portion of this property. Previously the eastern portion had been used as a site for a *fale* for the village *aumaga*.

On cross-examination this witness stated that this parcel is surrounded by Uiagalelei land, house, and stores. He also acknowledged that a certain Tuft was married into the Ulufale family and her oldest sister Fau, from a previous relationship of her mother, Maga, was related to the Uiagalelei family.

As to Uiagalelei Iona's testimony, he stated the parcel of land was historically Uiagalelei family land and that his father's sister, Fau, had been assigned the western portion by his father for a residence. She built a samoan *fale* there around 1953 and finally a more permanent structure before moving to another village with her husband. Fau's half-sister and her mother, Maga, remained on the land in the house and the half-sister, Tuft, married a certain Tietie, the brother of the Ulufale witness in this matter, and this was how the Ulufale family came to live on the land. Uiagalelei stated that the use by Fau's relatives of the western portion of this property (the west side of the bisecting landfill road) has not been disturbed because she was a sister to his father, but the recent building of a house by Faasuamalie on the eastern portion of the property far exceeded the previous assignment to Fau.

## Discussion

The testimony offered herein is similar to the previous testimony offered by the parties in LT. No. 59-90. That Court decided that it would be highly unusual for a senior *matai* to allow persons rendering service to another family's senior *matai* to reside on their communal lands. Therefore that Court held that the entire parcel was the land "Lepapa" belonging to the Ulufale family.

217

As we have decided earlier, however, the Ulufale communal land known as "Lepapa" does not extend to this area. This parcel of land is totally surrounded by Uiagalalelei land and buildings. We find that although it might be unusual to see members of the Ulufale family live on Uiagalalei lands while they continued to render services to the Ulufale senior *matai*, it is far more unusual to find a small island of Ulufale communal land, with the same name as the bulk of Ulufale lands well to the east of this parcel, within a sea of Uiagalalelei land and houses. The most plausible explanation for this agreeably unusual occurrence is that the Ulufale family came to the land with the permission of the Uiagalalelei family, through Fau, the aunt of the present Uiagalalei. By a preponderance of the evidence, we find that the Uiagalelei family prevails as to the title to the eastern portion of this particular one-half acre parcel which is included in the 10 acre parcel of Uiagalelei land decided above.

## Conclusion

With respect to LT. No. 31-91, we hold that the proposed registration of the one-half acre parcel of the land claimed by the Ulufale family as the land "Lepapa" be denied. Such portion of this disputed property as lies within the 10 acre survey of Uiagalalei land, (that portion east of the landfill road), shall be included in that registration. Uiagalalei has not filed any survey embracing the western portion of this parcel and has indicated that the present use and occupancy of that portion by the Ulufale family members may continue. We leave that matter for later resolution between the parties, which we may hope could be conducted in other than a courtroom setting.

With respect to the residence of Faasuamalie constructed on the eastern side of the road upon a portion of Uiagalalei land, we find this structure to be the property of Faasuamalie. The parties may either negotiate a lease, purchase, or rendering of services arrangement to prevent a forfeiture of this residence. Should the parties be unable to resolve this matter through good faith negotiations and compromise, either party may petition this Court for such relief as is proper and just under the circumstances.

So Ordered, Adjudged and Decreed.